MELINDA HAAG (CABN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Chief, Criminal Division

ADAM A. REEVES  (NYBN 2363877)
Assistant United States Attorney

    450 Golden Gate Ave., Box 36055
    San Francisco, California 94102
    Telephone:  (415) 436-7157
    Fax: (415) 436-7234
    E-Mail: adam.reeves@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR-11-0664 JSW |
| Plaintiff, | JOINT STATUS REPORT |
| v. | |
| EBRAHIM SHABUDIN and THOMAS YU, | |
| Defendants. | |

I.    THE GOVERNMENT'S STATUS REPORT

    A.    <u>Bank Secrecy Act Materials</u>

To comply with the Bank Secrecy Act (BSA), 31 U.S.C. § 5311 *et seq.*, the government sequestered approximately 475,000 documents in the DOJ Relativity Database.  These documents were culled using a broad set of BSA-related search terms and the search was run against the entirety of the DOJ Relativity Database, which contains approximately 8.7 million documents.

On February 18, 2014, the government moved for a protective order authorizing it to produce all these withheld documents but imposing protective conditions on the parties before the documents could be used publicly, like, for example, at trial.  Document 142.  The defendants objected to the production

JOINT STATUS REPORT
CASE NO. CR-11-0664 JSW

of these materials even with the protective order sought by the government. Document 143. On March 3, 2014, Judge Vadas denied that motion concluding that "it is more appropriate for the Government to obtain its own advice from the DOJ than for the court to wade into this issue." Document 148 at 1-2.

Pursuant to the Court's direction, the government then began analyzing the proper review of these approximately 475,000 documents. That analysis required the government to devise a strategy to comply with both its need to withhold materials covered by BSA, like filed suspicious activity reports (SARs), and our need to produce discoverable evidence pursuant to its *Brady*, *Giglio* and *Jencks* obligations and DOJ's discovery policies. On the massive scale of the discovery in this case, the twin imperatives of complying with BSA and *Brady* etc. have presented uniquely complex challenges.

On May 29, 2014, the government approved the production of approximately 469,000 of these sequestered documents on the DOJ Relativity Database. We have begun the process of uploading those documents to the database. We anticipate that the documents will be available to the defendants before June 30, 2014. The documents will be indexed and made available in a segregated "folder" that will facilitate the defendants' review of the documents and reduce the need for duplicative searches on other parts of the database. Once this production is complete, the government does not anticipate adding more documents to the DOJ Relativity Database. Consistent with DOJ's policies, the government will conduct a further review of the remaining documents to determine whether additional disclosures are required.

At this time, the government believes this production of approximately 469,000 documents will be the last voluminous production of documents from the former United Commercial Bank (UCB). While we continue to obtain and produce new documents from various sources, those productions have been comparatively small and we do not now anticipate other voluminous productions.

JOINT STATUS REPORT
CASE NO. CR-11-0664 JSW

B.   Request for a January 2015 Trial

On April 8, 2014, Judge Vadas ordered the government to continue to pay for the DOJ Relativity Database through December 2014 and the defendants' trial preparation.  Document 177 at 7.  The cost to the government of maintaining the DOJ Relativity Database is substantial largely because it is equipped with sophisticated search software and support personnel paid for by the government.  Because the vast majority of the discoverable documents will be available to the defendants in June 2014, we now recommend that the Court direct the parties to confer about a scheduling order that would insure a trial of this Indictment in January 2015.

At the March 6, 2014 status conference, the Court requested a proposed briefing schedule in the next joint status report.  Following the Court's April 21, 2014 Standing Order in Criminal Cases, the government proposes the following preliminary core schedule:

December 3, 2014    Motions *in Limine*

December 17, 2014   Final Pretrial Conference

January 7, 2015     Jury Selection

January 12, 2015    First Day of Trial

The government anticipates that it will take approximately three trial weeks to present its case-in-chief.

Even if the trial schedule must later be modified for good cause, setting a trial date now will facilitate the government's ability to produce its *Jencks* materials earlier and address budgetary issues associated with the cost of maintaining the DOJ Relativity Database.

JOINT STATUS REPORT
CASE NO. CR-11-0664 JSW

II.   THE DEFENSE STATUS REPORT

A.   Overview And Summary

Pursuant to this Court's Order of March 6, 2014, to suggest a schedule for the next round of motions, the defendants propose the litigation and trial plan set forth below. We do not oppose setting a trial date which, unlike the government's scheduling proposal, allows for reasonable discovery completion and review, and for litigation of remaining pretrial motions. For the reasons stated in the following, brief case status summary, including developments since the parties last appeared before this Court, we urge the schedule set forth below, subject to the Court's convenience.

B.   The Superseding Indictment

On March 11, 2014, well over two years after the initial indictment, the government filed a superseding indictment, adding additional charges based upon the same transactions underlying the initial indictment.

C.   Bill Of Particulars

The Court has ordered the government to provide a bill of particulars on three separate occasions. The issue of particulars remains the subject of a pending motion before this Court and, therefore, we will not address that question in detail here; however, particularly given the voluminous nature of this case, the litigation schedule proposed below is based upon resolution of the issue of particulars along the lines the Court articulated on March 6, 2014.

D.   State Of Discovery Access And Review

1.   The DOJ Relativity Database And The Limitations On Defense Access To Discovery

As this Court is aware, the volume of discovery in ths case is enormous, now consisting of over 10 million documents housed in the DOJ Relativity Database.  After the defense became aware in late 2013 that millions of critical documents and data had not been included in that database as expected, the defense filed motions to compel their inclusion, which were litigated in hearings before Judge Vadas. That litigation resulted in the ostensible addition of the disputed data by April 1, 2014. See, Judge Vadas's Order of April 8, 2014, Document 177 at 3. However, after they became aware in December of 2013 that millions of the most important items of evidence in the case were missing from the database, the defendants were compelled to severely curtail their use of the database, and related case preparation,

in order to avoid continued document searches which would be unavailing and would have to be repeated once the database was complete (a costly pattern of wasted effort which, unfortunately, was well in place prior to the defendants' awareness that the database was not complete).

On February 26, 2014, the government threatened to close the database on June 1, 2014, forcing litigation of that question as well, and on March 24, 2014 it unilaterally curtailed defense project manager access, rendering the database essentially useless to the defense. See, Document 177 at 7; Document 173, pp. 12-14.

The important point for scheduling purposes is that, while the database has been restored pursuant to Judge Vadas's Order of April 8, 2014 (Document 177), from December of 2013 through April 8, 2014 the defendants could use the database only for limited purposes, due to its incompleteness, and from March 24, 2014 through April 8, 2014, they could make no meaningful use of it. These extended periods without defense access to the case evidence inform the litigation schedule proposed below.

2. <u>BSA Documents And The Additional To The DOJ Database of Over 460,000 Items Of Discovery</u>

On February 18, 2014, the government filed a motion seeking a protective order, ostensibly to facilitate disclosure and possible admission in evidence of some 422,000 documents (over 1.5 million pages) purportedly covered by the Bank Secrecy Act. Document 142. By way of its motion, the government sought the Court's imprimatur on a scheme which would allow admission of Suspicious Activity Reports (SAR) upon a showing of "cause" (Id., at 5); however, there is no legal authority for such a scheme. See, Document 143, pp. 2-4. Consequently, the defendants opposed the motion, not to deny themselves access to discovery, but because: 1) except to the extent that they include Brady materials, SAR are neither discoverable nor admissible and the "defendants cannot agree to any procedure which suggests that the government may obtain admissibility of SARs at trial" ( Id); and, 2) particularly in light of the fact, as noted at oral argument on the BSA motion, that a protective order is already in place in this case, in reality, the government's motion sought "to provide an avenue for improper admission of inadmissible evidence." Id., at 5. In light of the weight of applicable authority, Judge Vadas denied the government's motion. Document 148.

At the time of its February 18, 2014, the government stated that it had sequestered some 422,000 documents under the BSA by using "search terms" and that it had "not undertaken to review" those documents. Document 142, pp. 2-3. Now, in the instant status report, the government states that it has conducted an analysis balancing the BSA secrecy of SAR's against its Brady obligations and, as a result, by June 30, 3014, will upload some 469,000 previously sequestered (and, presumably Brady) documents, onto the same DOJ relativity database that it sought to close by June 1, 2014.

      3.    <u>The Steady Stream Of Additional Voluminous Discovery Outside The Database In Inaccessible Format</u>

Beginning immediately prior to the last Status Conference in this case, on February 25, 2014 the government has steadily added to the mountain of discovery in this case, outside the DOJ Database. In several productions on separate disks, including on February 25, March 12, March 24 and April 2, the government has produced between 218,000 and 233,000 pages of documents (in TIF & PST format), including UCB materials, and well over 2 gigabytes of recorded materials. The documents are not in a searchable format.

Most recently, on May 23, 2014, the government devolved to supplying discovery materials by way of some 700 pages of hard copy.

On the one hand, this is a burdensome amount of material to search, one item at a time. On the other hand, it would take relatively little time, effort or expense for the government to include and segregate these documents in a DOJ Relativity Database that already includes millions of documents. In fact, the only reason not to do so is to make it more difficult for the defendants to access and review these materials. In order to expedite this matter, we ask that the Court order the inclusion and segregation of the above- referenced productions in the DOJ Relativity database, just as the government has proposed to do with the BSA materials discussed above, and that any future voluminous productions be treated the same way.

E.    <u>Proposed Motion And Trial Schedule Based Upon Appropriate Particulars And Discovery Access</u>

Given the lengthy delays in allowing defense access to the evidence discussed above, the government's history of unwillingness to provide particulars, and the steady stream of newly supplied discovery, the government's proposed schedule is unreasonable; however, assuming appropriate

JOINT STATUS REPORT
CASE NO. CR-11-0664 JSW

1 | resolution of these issues, pursuant to this Court's Order to propose a schedule for the next round of
2 | motions, and pursuant to the Court's Standing Order, the defendants propose the following schedule,
3 | subject to the Court's convenience:

| Date | Event |
|---|---|
| July 3, 2014 | Additional Defense Pretrial Motions Filed |
| July 18, 2014 | Government Responses |
| July 25, 2014 | Defense Replies |

Hearing scheduled at the Court's discretion.

| Date | Event |
|---|---|
| February 4, 2015 | In Limine Motions Filed |
| February 18, 2015 | Final Pretrial Conference |
| March 4, 2015 | Jury Selection |
| March 9, 2015 | First Day Of Trial |

*****

DATED: June 2, 2014            Respectfully submitted,

MELINDA HAAG
United States Attorney

/s/

Adam A. Reeves
Assistant United States Attorney

DATED: June 2, 2014            Respectfully submitted

Cotsirilos & Campisano LLP

By:            /S/
George J. Cotsirilos, Jr.
Attorneys for Defendant
Thomas Yu

Murphy, Pearson, Bradley & Feeney

By:            /S/
James A. Lassart
Attorneys for Defendant
Ebrahim Shabudin

JOINT STATUS REPORT
CASE NO. CR-11-0664 JSW